UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

REPORT AND RECOMMENDATION

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Alan R. Vaughn

                              Plaintiff,

        vs.

Richard Swatek; Curtis D. Foss;
VFW Quartermaster Myron
Choquette; Merchants Bank, N.A.;
Martha Grimes; Koochiching
County Attorney Jennifer
Hasbargen; Koochiching
County Court Administrator
Carol Clausen; Ninth Judicial
District Court Judge Charles H.
LeDuc; Ninth Judicial District
Court Judge Donald J. Aandal;
Ninth Judicial District Court
Judge Donna K. Dixon; and
Ninth Judicial District Court
Judge John P. Smith,

                              Defendants.        Civ. No. 05-152 (DWF/RLE)

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

I.  <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of Myron Choquette ("Choquette") to Dismiss or, in the alternative, for Summary Judgment; the Motion of Jennifer Hasbargen ("Hasbargen") to Dismiss; the Motions of Charles H. LeDuc ("Judge LeDuc"), Carol Clausen ("Judge Clausen"), Donald J. Aandal ("Judge Aandal"), Donna K. Dixon ("Judge Dixon"), and John P. Smith ("Judge Smith")(collectively, the "Judicial Defendants"), to Dismiss; the Motions of Merchants' Bank, N.A., and Martha Grimes (collectively "Merchants"), to Dismiss; the Motion of Richard Swatek ("Swatek") to Dismiss;[1] and the Motions of the Plaintiff to Join Additional Parties, to Appoint a Special Prosecutor, to Remove a pending action from State Court, and for Orders of Entry of Defaults against Swatek, and Curtis D. Foss ("Foss").

---

[1]Swatek also filed a <u>pro</u> <u>se</u> Motion for leave to file a Cross Claim against Merchants. See, <u>Docket No. 26</u>. In response, Merchants filed a Motion to Dismiss the Cross Claim, in its entirety. See, <u>Docket No. 29</u>. Swatek has since advised the Court of his intention to withdraw that Motion, and accordingly, we recommend that both Swatek's Motion for leave to file a Cross Claim, and Merchant's Motion to Dismiss the Cross Claim, be denied, as moot.

Hearings on the Motions were conducted on May 12, 2005, June 23, 2005, and September 1, 2005.  At the Hearing of May 12, 2005, the Plaintiff appeared pro se; Choquette appeared by Peter D. Gray, Esq.; Hasbargen appeared by Stephen G. Anderson, Esq.; the Judicial Defendants appeared by John S. Garry, Assistant Minnesota Attorney General; Merchants appeared by Anna M. Burgett, Esq.; Swatek appeared pro se; and Foss appeared pro se.  At the Hearing of June 23, 2005, the Plaintiff appeared pro se; Swatek appeared by Kenneth A. Kimber, Esq; and no appearances were made by, or on behalf of, any of the other parties.  At the Hearing on September 1, 2005, the Plaintiff appeared pro se; Swatek appeared by Kenneth A. Kimber, Esq.; Choquette appeared by Peter D. Gray, Esq.; and no appearances were made by, or on behalf of, any of the other parties.

For reasons which follow, we recommend that all of the Defendants' dispositive Motions be granted, that all of the Plaintiff's Motions be denied, and that the Plaintiff's Complaint be dismissed, as to each of the named Defendants. We also recommend that the Plaintiff be directed to show cause why he should not be sanctioned, for his abuse of the Court's processes in this litigation.

II. <u>Factual Background</u>

The Plaintiff commenced this action under Title 42 U.S.C. §1983, alleging that the "actions and failures" of the Defendants, during the conduct of a State Court action which he brought against Swatek, Merchants, and Hasbargen, who is the Koochiching County Attorney, violated his right to procedural due process and equal protection, and constituted invidious gender discrimination. <u>Amended Complaint</u>, at ¶1. He also alleges that all of the named Defendants, with the exception of Merchants, engaged in a conspiracy against his rights, in violation of Title 18 U.S.C. §241. <u>Id.</u> at ¶5.

While the allegations of the Plaintiff's Amended Complaint are somewhat difficult to comprehend, it appears that the Plaintiff had, at one time, occupied the residence belonging to Swatek. See, <u>Amended Complaint filed in Koochiching County District Court, Court File No. CO-04-124 ("Plaintiff's Koochiching Complaint")</u>, at ¶4, <u>Affidavit of Anna M. Burgett</u>, at Exh. A., <u>Docket No. 13</u>. Thereafter, Swatek defaulted on his mortgage, which had been assigned to Merchants, and Merchants initiated a foreclosure action. <u>Affidavit of Lawrence A. Willford ("Willford Aff.")</u>, at ¶2. At some point, prior to the foreclosure, the property was damaged by a sewer malfunction, and an insurance claim was submitted by Merchants,

-4-

who received payment on that claim.  <u>Plaintiff's Koochiching Complaint</u>, at ¶¶6 and

15; <u>Willford Aff.</u>, at ¶3.   Subsequently, Swatek commenced an action against

Merchants, in Conciliation Court in Winona County, Minnesota, for the insurance

proceeds.  <u>Willford Aff.</u>, at ¶3.  Prior to the resolution of that claim,[2] the Plaintiff

commenced an action in the Minnesota District Court for Koochiching County,

seeking to recover the proceeds of the insurance claim as, he alleged, he had expended

money, and effort, to repair the sewage malfunction.   See generally, <u>Plaintiff's</u>

<u>Koochiching Complaint</u>; <u>Willford Aff.</u>, at ¶6.  Since Merchants was never a party to

any agreement between the Plaintiff and Swatek, Merchants filed a Motion to deposit

the insurance proceeds with the State District Court, and to be dismissed from the

action.[3]   The State Court granted the Motion, and dismissed the Plaintiff's claim

---

[2]Merchants has represented that no settlement was ever reached with Swatek on
that claim.

[3]In effect, Merchant's position in the State Court action was that of an
interpleader.  The process, by which Merchant's was dismissed from that action, is
detailed in Rule 67.02, Minnesota Rules of Civil Procedure, which, in relevant part,
provides as follows:

> When money or other personal property in the possession
> of any person, as bailee or otherwise, is claimed adversely
> by two or more other persons, and the right thereto as
> between such claimants is in doubt, the person in

(continued...)

against Merchants, with prejudice.   <u>Burgett Aff.</u>, at Exh. N. The Plaintiff unsuccessfully appealed that decision to the Minnesota Court of Appeals. <u>Id.</u>, at Exh. Q.

The Plaintiff's State Court Complaint also contained a cause of action against Hasbargen for her failure to initiate a criminal prosecution against Swatek, and Merchants, for conduct which, he alleged, amounted to theft under Minnesota law. Much as here, the Plaintiff asserted that Hasbargen's failure to prosecute those alleged

---

[3](...continued)

> possession, though no action is commenced against that person by any of the claimants, may place the property in the custody of the court.  The person in possession shall apply to the court of the county in which the property is situated, setting forth by petition the facts which bring the case within the provisions of this rule, and the names and places of residence of all known claimants of such property.  If satisfied of the truth of such showing, the court, by order, shall accept custody of the money or other property, and direct that, upon delivery and upon giving notice thereof to all persons interested, personally or by registered mail as prescribed in the order, the petitioner is relieved from further liability on account thereof.

By depositing the funds with the State Court, Merchants was renouncing any claim to those proceeds that it might otherwise have, and allowed Swatek, and the Plaintiff, the opportunity to seek recovery of those funds by one or the other.  Given the claims before the State Court, there was no error in its dismissal of Merchants from that proceeding.

offenses violated his constitutional rights, and necessitated the appointment of a special prosecutor.   The State Court dismissed Hasbargen from the suit, and sanctioned the Plaintiff, under Rule 11, Minnesota Rules of Civil Procedure, in the amount of $5,000.00, in order to deter him from making further frivolous claims.  See, Vaughn v. Swatek, C0-04-124 (Minn. Dist. Ct. 9th Dist., February 14, 2005); Affidavit of Steven G. Anderson, at Exh. 7.

In his present Complaint, the Plaintiff has alleged that Merchants, and Swatek, cooperated in the sale of Swatek's former residence by the delivery of a fraudulent Warranty Deed.  Amended Complaint, at ¶2.  He further contends that Swatek, and Merchants, conspired to use the proceeds from the insurance claim to pay for delinquent interest on Swatek's mortgage, rather than to pay the Plaintiff for the materials and labor, that he allegedly expended in the repair of the damage caused by the sewer malfunction.  Id.

The Plaintiff has also alleged that Swatek filed "numerous false and frivolous claims and counterclaims against the Plaintiff," and that he has sent threatening letters, made threatening telephone calls, and enlisted Foss, and Judge LeDuc, to harass him, his son, his daughter-in-law, his former wife, and persons identified as Sandra Harju, Gordon Perrault, and Richard Strom.  Id., at ¶3.  He further contends that he filed

several complaints about the alleged harassing conduct with Hasbargen, and Duane Nelson, who is the Koochiching County Sheriff, but that neither person investigated his complaints, and no criminal prosecution has ever been commenced.  Id., at ¶4. The Plaintiff alleges that Hasbargen has a personal relationship with Swatek's wife, and that the failure to prosecute his complaints violated his equal protection and due process rights.  Id.  He maintains that such a failure requires the appointment of a special prosecutor.

The Plaintiff's Complaint also contains several allegations pertaining to the propriety of certain rulings issued by the Judicial Defendants, who, aside from Clausen, are each State Court Judges in Minnesota's Ninth Judicial District. Specifically, the Plaintiff has alleged that Judge LeDuc is "a personal friend and former neighbor" of Swatek, and that his issuance of a Harassment Restraining Order against the Plaintiff was improper.  Id. at ¶5.  He has further challenged the propriety of Judge Aandal's issuance of an Order denying his application for leave to proceed in forma pauperis ("IFP"), id. at ¶6; Judge Smith's issuance of an Order that denied the Plaintiff's Motion for a Harassment Restraining Order against Foss, and barred both the Plaintiff, and Foss, from entering the Veterans of Foreign Wars ("VFW") Post No. 2948, which is located in International Falls, Minnesota, together with a subsequent

Order, which denied the Plaintiff IFP status, id. at ¶¶7-8; Judge Dixon's various evidentiary rulings, as well as her revocation of the Plaintiff's IFP status. Id. at ¶11. The Plaintiff has also alleged that Clausen, who is the Koochiching County Court Administrator, improperly refused to file numerous documents that he had submitted. Id. at ¶¶6-7.

In addition, the Plaintiff has asserted claims against Choquette, who is the Quartermaster for the VFW Post in International Falls, Minnesota. Id. at ¶10. Allegedly, the Plaintiff complained to Choquette that Foss was harassing him at the VFW, but that, despite his representations to the contrary, Choquette took no action to protect the Plaintiff from the allegedly harassing conduct. Assertedly, both Foss, and the Plaintiff, have since been barred from entering the VFW, by a Court Order, and Choquette is alleged to have adhered to that Order.

### III. Discussion

A.   The Defendants' Motions to Dismiss.

Each of the Defendants, with the exception of Foss, have brought dispositive Motions. In our resolution of these matters, we have considered materials that are outside of the Plaintiff's pleading, and accordingly, we analyze the Defendants' respective Motions under Rule 56, Federal Rules of Civil Procedure.

1.    <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Duffy v. Wolle</u>, 123 F.3d 1026, 1040 (8th Cir. 1997), cert. denied, 523 U.S. 1137 (1998).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire & Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003).  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003); <u>Jenkins v. Southern Farm Bureau Casualty</u>, 307 F.3d 741, 744 (8th Cir. 2002); <u>Herring v. Canada Life Assurance</u>, 207 F.3d 1026 (8th Cir. 2000).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).  Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex

<u>Corp.</u>, 50 F.3d 507, 510 (8th Cir. 1995); <u>Settle v. Ross</u>, 992 F.3d 162, 163 (8th Cir. 1993).[4]

2.    <u>Legal Analysis</u>.    Each of the Defendants, with the exception of Merchants, are alleged to have participated in a conspiracy under Title 18 U.S.C. §241. Since our determination of the viability of the conspiracy claim involves the same considerations as to each of the allegedly conspiring Defendants, we analyze the merits

---

[4]In arguing against the various Motions of the Defendants, the Plaintiff has relied heavily on the Supreme Court's opinion, in <u>City of Monterey v. Del Monte Dunes of Monterey Ltd.</u>, 526 U.S. 687 (1999), for the proposition that Summary Judgment is improper because it would violate his Seventh Amendment right to a Jury Trial, on his Section 1983 claims. However, such reliance is misguided, as the Court's holding, in <u>City of Monterey</u>, does nothing more than acknowledge that the Seventh Amendment right to a Jury Trial, includes claims which are brought under Section 1983.

On the other hand, <u>City of Monterey</u> does not refute the law of this Circuit that, "a grant of summary judgment does in itself not violate the Seventh Amendment." <u>Harris v. Interstate Brands Corp.</u>, 348 F.3d 761, 762 (8th Cir. 2003). Accordingly, the Seventh Amendment is not violated where a Section 1983 is dismissed, under Rule 56(c), upon a finding that there are no genuine issues of material fact for the Jury to decide, and the movant is entitled to Judgment as a matter of law. See, <u>Stanko v. Maher</u>, 419 F.3d 1107, 1112 (10th Cir. 2005); see, e.g., <u>Locke v. Davey</u>, 540 U.S. 712 (2004). Of course, the Plaintiff has previously be informed of this same legal precept but, apparently, without any affect on his raising the same frivolous contention. See, <u>Vaughn v. City of North Branch</u>, 103 Fed.Appx. 73, 74 (8th Cir., July 27, 2004)(characterizing the Plaintiff's claim, that the District Court's grant of Summary Judgment deprived him of his constitutional right to a Jury Trial as "frivolous"), citing <u>Harris v. Interstate Brands Corp.</u>, supra at 762 for the proposition that the "grant of summary judgment does not violate Seventh Amendment right to jury trial."

of that claim, prior to addressing the moving Defendants' respective Motions, as they pertain to the Plaintiff's asserted claims under Section 1983.

    a. <u>The Conspiracy Claim</u>.  The Plaintiff alleges that he "believes that there was a violation of U.S.C. Title 18, Part I, Chapter 13, Section 241[]  Conspiracy against rights involving Swatek, Foss, LeDuc, Hasbargen, Clausen, Aandal, Dixon, Smith and Choquett [sic], for which a criminal investigation must be provided." <u>Amended Complaint</u>, at ¶5.   As articulated by our Court of Appeals, "there is no private cause of action under [Section] 241, even though the statute allows federal authorities to pursue criminal charges."  <u>United States v. Wadena</u>, 152 F.3d 841, 846 (8th Cir. 1997), citing <u>Cok v. Cosentino</u>, 876 F.2d 1, 2 (1st Cir. 1989), and <u>Lerch v. Boyer</u>, 929 F. Supp. 319, 322 (N.D. Ind. 1996)("Only the United States as prosecutor can bring a claim under Title 18 U.S.C. §241."); see, <u>Newcomb v. Ingle</u>, 827 F.2d 675, 677 n. 1 (10th Cir. 1987); <u>Briande v. Lavigne</u>, 223 F. Supp.2d 241, 251 (D. Me. 2002). Therefore, the Plaintiff cannot maintain an action against any of the named Defendants, under Section 241.

  Moreover, even if we were to indulgently construe the Plaintiff's allegations as an attempt to pursue a claim under Title 42 U.S.C. §1985(3), we would still find that the Plaintiff's allegations are insufficient to raise such a claim.  Section 1985(3), which

prohibits conspiracies to interfere with the civil rights of another, reads, in pertinent part, as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an  action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Title 42 U.S.C. §1985(3).

Here, the Plaintiff has not alleged that the conspiracy was an attempt to deprive him

of his franchise rights, and accordingly, we limit our discussion of any Section 1985(3)

claim to the first portion, or the "Equal Protection" section, of that Statute.

Our determination, concerning the sufficiency of the Plaintiff's allegations in

setting forth Section 1985(3) causes of action, is closely guided by our Court of

Appeals' decision in Federer v. Gephardt, 363 F.3d 754, 757-58 (8th Cir. 2004), where

the Court observed as follows:

> To state a claim under the equal protection provision of the
> first part of §1985(3), [the plaintiff] must allege (1) a
> conspiracy, 2) for the purpose of depriving another of the
> "equal protection of the laws, or of equal privileges and
> immunities under the laws;" (3) an act in furtherance of the
> conspiracy; and (4) an injury to the person or property, or
> the deprivation of a legal right.  Griffin v. Breckinridge, 403
> U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); 42
> U.S.C. § 1985(3).  A claim under this part of the section
> must also allege a class-based animus, Griffin, 403 U.S. at
> 102, 91 S.Ct. 1790.  In addition, [the plaintiff] must allege
> that an independent federal right has been infringed.
> Section 1985 is a statute which provides a remedy, but it
> grants no substantive stand-alone right.  The source of the
> right or law must be found elsewhere.   United Bhd. Of
> Carpenters and Joiners of Am. v. Scott, 463 U.S. 825, 833,
> 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); Great Am. Fed.
> Sav. & Loans Ass'n. v. Novotny, 442 U.S. 366, 376, 99
> S.Ct. 2345, 60 L.Ed.2d 957 (1979).

Id. at 757-758.

-15-

The Plaintiff's Complaint is barren of any allegation that would support a claim under Section 1985(3).  Specifically, the Plaintiff has failed to allege any facts to suggest that there was any agreement among the alleged conspirators to deprive him of his rights. See, Jenson v. Henderson, 315 F.3d 854, 862 (8th Cir. 2002)(A Section 1985(3) plaintiff "must prove an agreement between the conspirators, by pointing to at least some facts which would suggest that [the alleged conspirators] reached an understanding to violate her rights.").  Moreover, while the Plaintiff's Complaint contains the conclusory allegation that the violation of his Equal Protection rights is "due to invidious and gender discrimination," Amended Complaint, at ¶1, he has failed to allege any conduct which would support a finding that the alleged conspirators acted with a "class-based animus."[5]  Since those deficiencies are fatal to a Section 1985(3) claim, as a matter of law, even construing the Plaintiff's Section 241 claim as an attempt to pursue a claim under Section 1985(3), we are still obligated to recommend that the claim be dismissed, as to each of the named Defendants.

---

[5]At the Hearing on May 12, 2005, the Plaintiff asserted that he was of Native American decent.  However, no such allegation appears in his Complaint, and the Plaintiff has failed to set forth any facts, by allegation or otherwise, which would support an assertion that the alleged conduct of the Defendants was the result of a conspiracy predicated upon a class-based animus towards Native Americans.

b.    The Section 1983 Claims.    The Defendants' Motions assert separate grounds for seeking the dismissal of the Plaintiff's Section 1983 claim, and accordingly, we address each Motion, in turn.

1)    Hasbargen's Motion to Dismiss.    Hasbargen has urged that the claim against her be dismissed on the ground of res judicata.  "'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  Gurley v. Hunt, 287 F.3d 728, 731 (8th Cir. 2002), quoting Allen v. McCurry, 449 U.S. 90, 94 (1980). "The test applied to determine whether res judicata bars litigation of a claim is: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the judgment was a final judgment on the merits, and (3) whether the same cause of action and same parties or their privies were involved in both cases."  Id., citing De Llano v. Berglund, 183 F.3d 780, 781 (8th Cir. 1999); see also,  Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003); Canady v. Allstate Ins. Co., 282 F.3d 1005, 1014 (8th Cir. 2002); Black Clawson Co., Inc. v. Kroenert Corp., 245 F.3d 759, 762 (8th Cir. 2001); Lundquist v. Rice Memorial Hosp., 238 F.3d 975, 977 (8th Cir. 2001).

In determining the scope of preclusion, that a prior Judgment of a Minnesota Court will exact, we must look to the governing law of Minnesota.  See, <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373, 375 (1985)(a Federal Court must first consider the law of the State in which a Judgment was rendered when determining the preclusive effect to be accorded such a Judgment), reh'g denied, 471 U.S. 1062 (1985).  Under Minnesota law, "[a] judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every other matter which was actually litigated, but also as to every matter which might have been litigated therein."  <u>Dorso Trailer v. American Body & Trailer</u>, 482 N.W.2d 771, 774 (Minn. 1992), quoting <u>Mattsen v. Packman</u>, 358 N.W.2d 48, 49 (Minn. 1984); see also, <u>Sondel v. Northwest Airlines, Inc.</u>, 56 F.3d 934, 938 (8th Cir. 1995).  In effect, res judicata "is essentially a finality doctrine which dictates that there be an end to litigation."  <u>Dorso Trailer v. American Body & Trailer</u>, supra at 773-74, citing <u>Federated Mutual Ins. Co. v. Litchfield Prec. Comp., Inc.</u>, 456 N.W.2d 434, 438 (Minn. 1990).  Accordingly, it is "well established in Minnesota that a party 'should not be twice vexed for the same cause, and that it is for the public good that there be an end to litigation.'"  <u>Hauser v. Mealey</u>, supra at 807, quoting <u>Shimp v. Sederstrom</u>, 233 N.W.2d 292, 294 (Minn. 1975).

The Plaintiff's State Court action against Hasbargen alleged as follows:

> 19.    Defendant Koochiching County Attorney Jennifer Hasbargen, has refused to disclose a conflict of interest or to appoint a special prosecutor, to investigate the alleged crimes, which have been committed and such refusal to provide for an investigation, is a violation of the Plaintiff's constitutional right to procedural due process of law. The Defendant is not authorized under the law to violate the constitutional rights of the Plaintiff, under color of law and the protection from a lawsuit in her official capacity; therefore she is liable for suit as an individual.

Plaintiff's Koochiching Complaint, at ¶19.

A final Judgment on the Plaintiff's claim, against Hasbargen, was entered on February 17, 2005, following an Order of the State District Court, which dismissed Hasbargen from the suit, upon the following findings:

> 3.    Plaintiff Vaughn's claim against Defendant Hasbargen arises out of Hasbargen's determination that the dispute in the case is civil in nature and, therefore, her office would not conduct an investigation or pursue criminal charges.
>
> *     *     *
>
> 7.    Plaintiff Vaughn has failed to produce any evidence to indicate that the decision by County Attorney Hasbargen not to conduct a criminal investigation was based upon selective or discriminatory intent. Further, Plaintiff Vaughn has not produced any evidence to demonstrate that County Attorney Hasbargen abused her prosecutorial discretion.

-19-

> 8.     The Court finds that Plaintiff Vaughn's claims against County Attorney Hasbargen are frivolous, lacking in evidentiary support, presented for an improper purpose, are unwarranted by existing law, and needlessly increase the cost of litigation.

Vaughn v. Swatek, C0-04-124 (Minn. Dist. Ct. 9th Dist., February 14, 2005); Affidavit of Steven G. Anderson ("Anderson Aff."), at Exh. 7.

Based upon the State Court's Order, it is clear that the Judgment dismissing Hasbargen from the Plaintiff's State Court action was based on the merits, and the Plaintiff has presented no viable challenge to the State Court's jurisdiction over his State Court claim.

Here, the Plaintiff's claim against Hasbargen is predicated upon the following allegations:

> 4.  The Plaintiff has filed complaints in regards to violations of Minnesota Statutes of harassment and personal property damage, with County Attorney Jennifer Hasbargen and Koochiching County Sheriff Duane Nelson, however, neither party has investigated, nor provided for the prosecution of any of the numerous criminal violations of Minnesota Statutes, including the documented harassment or criminal property damage.  Jennifer Hasbargen has a direct conflict of interest in this matter, due to her former employment and personal friendship with Defendant Swatek's wife, Cheryl Swatek.  Defendant Hasbargen has maintained in the State Court, her right to prosecutorial discretion, however, Minn. Stat. 388.12 provides for the appointment of a special prosecutor, when county attorney refuses to prosecute.  The Plaintiff's right to procedural due

process, equal protection under the law and to petition for redress of wrongdoing, requires the appointment of a special prosecutor, as these are constitutional rights afforded by Article XIV. [sic] Section 1, of the Amendments to the U.S. Constitution. Defendant Hasbargen's refusal to provide for the Plaintiff's constitutional rights under the color of the law, is a violation of U.S.C. Title 42, Chapter 21, Section 1983.

Amended Complaint, at ¶4.

Plainly, a comparison of the Plaintiff's allegations in the State Court action, and his allegations in this action, establishes that the Plaintiff is attempting to litigate the same claims here, that were raised, and decided, by the State Court. While the Plaintiff's present claim was brought under Title 28 U.S.C. §1983,[6] it appears that the predicate for the Plaintiff's claim against Hasbargen, in both the State Court action, and here, is Hasbargen's asserted failure to investigate, and criminally prosecute, allegedly fraudulent activity relating to the sewer malfunction and the sale of Swatek's home, as well as her failure to appoint a special prosecutor. Therefore, granting Full Faith and Credit to the Judgment of the State Court, we recommend that Hasbargen's Motion

---

[6]While the Plaintiff's State Court Complaint does not identify Section 1983 as a basis for liability, an Addendum to that Complaint alleges that Hasbargen's failure to investigate Swatek and Merchant's conduct, or to appoint a special prosecutor, provided him with a cause of action under Section 1983. See, Affidavit of Kenneth A. Kimber, Exh. E, p. 2, ¶4, Docket No. 99.

-21-

to Dismiss be granted, as to the Plaintiff's Section 1983 claim, on the ground of res judicata.

While we find that the Plaintiff's Section 1983 claim against Hasbargen is barred by res judicata, in the interests of completeness, we analyze whether the allegations against Hasbargen are sufficient to state a viable claim under Section 1983, and find that they are not. Specifically, standing is required by the "case or controversy" limitation, which is contained in Article III of the United States Constitution, and is, therefore, "a threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975); see United States Constitution, Article III, Section 2, clause 1.

The United States Supreme Court has articulated the showings necessary to satisfy the standing requirement as follows:

> To satisfy the "case" or "controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.

Bennett v. Spear, 520 U.S. 154, 162 (1997), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) [additional citations omitted].

The United States Supreme Court has further explained that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," and therefore, "lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); see also, United States v. United Security Savings Bank, 394 F.3d 564, 567 (8th Cir. 2004).

The fatal, legal infirmity, of the Plaintiff's claim against Hasbargen, is amply illustrated by two decisions of the United States Supreme Court.  In Linda R.S. v. Richard D., supra, the plaintiff was the mother of an illegitimate child, who sought an injunction which would forbid a district attorney from declining to prosecute the father of the illegitimate child for the failure to pay child support -- a prosecution, she claims, that was authorized by an applicable State statute.  The district attorney construed the statute as only being applicable to the fathers of legitimate children.  In claiming a standing to sue, the plaintiff argued that, if the prosecution were compelled, then she would probably have received the child support to which she believed the statute entitled her.  The United States Supreme Court rejected her argument, explaining as follows:

[W]e hold that, in the unique context of a challenge to a criminal statute, [plaintiff] has failed to allege a sufficient nexus between her injury and the government action which she attacks to justify judicial intervention.   To be sure, [plaintiff] no doubt suffered an injury stemming from the failure of her child's father to contribute support payments. But the bare existence of an abstract injury meets only the first half of the standing requirement.   "The party who invokes (judicial) power must be able to show * * * that he has sustained or is immediately in danger of sustaining some direct injury as the result of (a statute's) enforcement." * * * As this Court made plain in Flast v. Cohen[, 392 U.S. 82, 102 (1972)], a plaintiff must show "a logical nexus between the status asserted and the claim sought to be adjudicated * * *.   Such inquiries into the nexus between the status asserted by the litigant and the claim he presents are essential to assure that he is a proper and appropriate party to invoke federal judicial power."

*     *     *

Here, [plaintiff] has made no showing that her failure to secure support payments results from the nonenforcement, as to her child's father, of [the State statute].  Although the [State] statute appears to create a continuing duty, it does not follow the civil contempt model whereby the defendant 'keeps the keys to the jail in his own picket [sic]' and may be released whenever he complies with his legal obligations. On the contrary, the statute creates a completed offense with a fixed penalty as soon as a parent fails to support his child.   Thus, if appellant were granted the requested relief, it would result only in the jailing of the child's father.   The prospect that prosecution will, at least in the future, result in payment of support can, at best, be termed only speculative.  Certainly, the "direct" relationship between the

-24-

> alleged injury and the claim sought to be adjudicated, which
> previous decisions suggest is a prerequisite of standing, is
> absent in this case.

Linda R.S. v. Richard D., supra at 617- 618 [citations omitted].

The very same may be said here -- while a prosecution, by Hasbargen, might have resulted in some criminal penalty being imposed upon those whom the Plaintiff regards as criminals -- it is simply too speculative to conjecture that such a penalty would have resulted in some monetary payment to the Plaintiff.

Similarly, in Leeke v. Timmerman, 454 U.S. 83 (1981), certain inmates in a prison uprising contended that, during the uprising, they were unnecessarily beaten by the prison guards, and one of the prisoners sought criminal arrest warrants against four of the guards.   In support of the warrants, the prisoners submitted the sworn statements of an employee of the prison who purportedly investigated the incident, and concluded that the prisoners were victimized by the prison guards.  The judicial officer advised the legal advisor to the State's Department of Corrections that he intended to issue the Arrest Warrants against the guards, and the advisor relayed that intent to the prison's warden.  "In an effort to have the criminal action against the correctional officers dropped, the legal adviser and Warden met with the County Sheriff, Deputy Attorney, and State Solicitor."  Id. at 84.  Following that meeting, the State Solicitor

wrote a letter to the judicial officer requesting that the warrants not be issued, and thereafter, they did not issue.

Subsequently, the prisoners filed suit in a Federal District Court, in which they contended that the State Solicitor, and the Judicial Officer, among others, had conspired, in bad faith, to block the issuance of the Arrest Warrants for the prosecution of the guards.  The Federal District Court found for the prisoners, and that finding was affirmed on appeal to the Court of Appeals.  On subsequent review, however, the United States Supreme Court reversed on the basis of Linda R.S., reasoning as follows:

> The threshold inquiry is whether [the prisoners] have standing to challenge the actions of the [defendants].  As in Linda R.S., there is a questionable nexus between respondents' injury -- the alleged beatings -- and the actions of the state officials in which they gave information to a Magistrate prior to issuance of an arrest warrant.  Even without the prosecutor's acts, there is no guarantee that issuance of the arrest warrant would remedy claimed past misconduct of guards or prevent future misconduct.  Even if a prosecution could remedy respondents' injury, the issuance of an arrest warrant in this case is simply a prelude to actual prosecution.  [The prisoners] concede that the decision to prosecute is solely within the discretion of the prosecutor.  It is equally clear that issuance of the arrest warrants in this case could not necessarily lead to a subsequent prosecution.

A private citizen therefore has no judicially cognizable right to prevent state officials from presenting information, through intervention of the state solicitor, that will assist the magistrate in determining whether to issue the arrest warrant. Just as [the prisoners] were able to present argument as to why an arrest warrant should issue, a state solicitor must be able to present arguments as to why an arrest warrant should not issue.  This is not a case in which prison officials interfered with the transmittal of information from [the prisoners] to the magistrate, thereby interfering with [the prisoners'] ability under South Carolina law to seek the arrest of another. * * *

In this case [the prisoners] had access to judicial procedures to redress any claimed wrongs.  [The prisoners], in other words, were able to "set in motion the governmental machinery," * * * and bring their complaints to the attention of the Magistrate.  The actions of the state officials, by which they influenced the decision of the State Solicitor to oppose issuance of the arrest warrants, thus did not violate any judicially cognizable rights of [the prisoners].

Id. at 86-87 [emphasis in original; citations omitted].

While both Linda R.S., and Leeke, involved some factual differences, which are not

implicated in the Plaintiff's allegations, those differences are inconsequential to the

holdings of the Court, and we find both cases to control here.

In sum, the alleged conduct of Hasbargen is insufficient to create standing for

the Plaintiff to sue her, since the alleged injury to the Plaintiff is not "fairly traceable"

to Hasbargen's decision not to investigate or prosecute the Plaintiff's complaints of

harassment and fraudulent activity, or to her failure to appoint a special prosecutor. See, Allen v. Wright, 468 U.S. 737, 757-758 (1984).  It would be purely conjectural to conclude that the criminal prosecution of those persons would have resulted in the collection of funds which were allegedly withheld from the Plaintiff, or the cessation of the alleged harassment.  See, In re Appointment of Independent Counsel, 766 F.2d 70, 76 (2nd Cir. 1985).  Given the absence of allegations sufficient to establish that the injury complained of was caused by the conduct of Hasbargen, the Plaintiff does not have standing to challenge her alleged conduct.

Moreover, even assuming the presence of standing, the allegations against Hasbargen are otherwise insufficient to state a viable Section 1983 claim.  To state a claim under Section 1983, the plaintiff must allege facts which, if true, would prove "that the defendant has deprived him of a right secured by the 'Constitution and laws of the United States' * * * [and] that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage of any State or Territory.'"  Adickes v. S.H. Kress & Co, 398 U.S. 144, 150 (1970); Title 42 U.S.C. §1983.  Section 1983 does not create any independent rights, but is merely a vehicle for the enforcement of other rights which are protected under the Constitution and Federal law.  Alsbrook v. City of Maumelle, 184 F.3d 999, 1012 (8th Cir. 1999).

Therefore, in order to sufficiently state a Section 1983 claim, a claimant must allege the violation of a right protected by the Constitution, or by Federal law.    While the Plaintiff undoubtedly is entitled to his procedural due process, and equal protection rights, under the United States Constitution, he does not have the "individual right to have another person prosecuted for a crime."   Steele v. City of Bemidji, Minn., 114 F. Supp.2d 838, 850 (D. Minn. 2000), aff'd in relevant part, 257 F.3d 902 (8th Cir. 2001), cert. denied, 535 U.S. 1056 (2002).

Here, the Plaintiff appears to allege that Hasbargen's failure to investigate and prosecute his complaints of theft and harassment, or to appoint a special prosecutor, violated his procedural due process, and equal protection rights, under the Fourteenth Amendment to the United States Constitution.  Amended Complaint, at ¶5.  However, the Plaintiff has failed to identify any Federal right to the appointment of a special prosecutor,[7] see,   In re an Application for Appointment of Independent Counsel, 596 F. Supp. 1465 (E.D. N.Y. 1984), vacated on other grounds, 766 F.2d 70 (2nd Cir.

---

[7]The Plaintiff's reliance on Minnesota Statutes Section 388.12 is of no import, as that State Statute has no bearing on the Plaintiff's rights under Federal law, and the State Court has already determined that the Plaintiff is not entitled to the appointment of a special prosecutor under State law.  See, Vaughn v. Swatek, C0-04-124 (Minn. Dist. Ct. 9th Dist., October 4, 2004), Affidavit of Steven Anderson, at Exh. 4.

1985), or to the criminal prosecution of an another.  See, <u>Linda R.S. v. Richard D.</u>, supra at 619 ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); <u>Leeke v. Timmerman</u>, supra at 85-86 (same); see also, <u>Imbler v. Pachtman</u>, 424 U.S. 409, 424, 423, n. 20 (1976)(The decision to initiate a criminal prosecution is "intimately associated with the judicial phase of the criminal process," and "prosecutor(s) [must] exercise a discretionary judgment on the basis of evidence presented to them."); <u>Dohaish v. Tooley</u>, 670 F.2d 934, 938 (10th Cir. 1982)("A decision not to prosecute is a decision which is protected by [absolute] immunity.").    As a result, the Plaintiff has failed, as a matter of law, to state a Section 1983 claim against Hasbargen, and therefore, we recommend that Hasbargen's Motion to Dismiss be granted.

　　　　　　2)　　<u>The Judicial Defendants' Motion to Dismiss</u>.    As noted, Judges LeDuc, Aandal, Dixon, and Smith, are all State District Court Judges in Minnesota's Ninth Judicial District, while Clausen is the Court Administrator for Koochiching County.  As to those Defendants, the Plaintiff has alleged as follows:

> 5.    Judge Charles H. LeDuc is a personal friend and former neighbor of Defendant Swatek, who issued a Harassment Restraining Order against the Plaintiff on June 14, 2004, without a hearing and which was based upon the fraudulent affidavit of Curtis D. Foss. * * *

-30-

6.     On June 25, 2004, Judge Donald Aandal issued an order of the Court which denied the in forma pauperis status application of the Plaintiff and found: The action is frivolous and the applicant is not found to be indigent and is not entitled to proceed in forma pauperis.  The Plaintiff immediately attempted to file documents with the Koochiching County Court Administrator Carol Clausen in regard to this action, however, she refused to accept the documents for filing on three separate occasions * * *. Due to the refusal of the District Court to accept the documentation submitted in regard to the Plaintiff's in forma pauperis status, the Plaintiff filed a Notice of Appeal and Statement of the Case with the District Court and Appellate Court on July 7, 2004, which resulted in an Order of Remand to the District Court for ruling upon the Plaintiff's indigent status.  On September 28, 2004, Judge Aandal ruled that the Plaintiff's Motion for leave to proceed in forma pauperis was Granted and set a scheduled hearing of the Harassment Restraining Orders filed, for October 7, 2004, which eventually was conducted on November 10, 2004 by ITV, before Judge John P. Smith.

7.     Judge Smith dismissed the Harassment Restraining Order, which had been issued against the Plaintiff and issued an order that Curtis D. Foss and the Plaintiff were banned from the VFW until the ban was lifted by the Court. The Judge refused to provide the Plaintiff with procedural due process of law on a Petition for Harassment Restraining Order against Curtis D. Foss, despite unrefuted evidence of the numerous incidents of harassment by Curtis D. Foss upon the Plaintiff and others * * *.  Judge Smith improperly stated that the Harassment Statutes were instituted to protect females from harassment, that the harassment complaint filed by the Plaintiff did not rise to harassment and is not afforded the same protections. * * * The Plaintiff

-31-

submits that the actions and Order of Judge Smith, not only involve denials of procedural due process of law and equal protection, but invidious and gender discrimination [sic]. The Plaintiff attempted to file a Notice of Motion and Motion for Removal of Restrictions upon Alan R. Vaughn regarding the December 1, 2004 Order, with the Court Administrator and when she refused the documents were forwarded to Judge Smith, Judge Smith returned the documents, stating they were improperly submitted to him and would have to be filed with the District or Appellate Courts.   An appeal was prepared and filed with the Appellate Court by U.S. Mail on January 15, 2005.   The Plaintiff delivered the Notice of Appeal, Statement of the Case, Motion for Change of Harassment Restraining Order, Affidavit to Show Cause for Contempt by Curtis D. Foss, [and] Affidavit to Show Cause for Contempt by Carol Clausen to the Court Administrator for filing on January 18, 2005.   Court Administrator Clausen's refusal to accept documents for filing on numerous occasions, was misconduct by a public official, which was a violation of Minn. Stats. 609.43 * * * [and] Minn. Stats. 77.01 * * *.

8.    Judge John P. Smith has failed to perform his duties as required under the Minnesota Code of Judicial Conduct Canon 3(7) * * * and Canon 3(B)(1) and (2) * * * and addition thereto [sic], has refused to obey his oath of office, to uphold provisions of the U.S. Constitution in performance of his judicial duties, which were conducted under the color of the law, and denied the Plaintiff's right to equal protection, against invidious or gender discrimination. Judge Smith issued an Order dated January 26, 2005, denying the Plaintiff In Forma Pauperis status, under a false determination, that the Plaintiff's total annual income of $11,263.20 did not meet the requirements for indigent status, which must not exceed $11,638.00.   The District

-32-

Court's Judicial and Administrative actions, are intended to deny the Plaintiff procedural due process, as the costs of filing fees, certified copies of orders and transcripts are unaffordable to this indigent Plaintiff.

\*     \*     \*

11.     At a hearing conducted on November 10, 2004, without providing for proper notice of the hearing, Judge Donna Dixon permitted consideration of documents, of which, service thereof, had not been performed by Defendant Swatek upon the Plaintiff.  Judge Donna Dixon refused to allow the testimony of Sandra Harju or the Plaintiff, to refute the false statements and documentation submitted by Defendant Swatek.   Based on these false statements and false documentation, Judge Donna Dixon revoked the Plaintiff's In forma pauperis status, despite the Plaintiff's total annual income of $11,263.20, as evidenced in the Plaintiff's sworn Affidavit for Leave to Proceed In Forma Pauperis, Form IFP-1B and the federal guidelines of maximum annual income, which does not exceed $11,638.00.   This denial and her previous denial of the Plaintiff's request of Subpoenas for Depositions to be paid by the Court, has denied this indigent Plaintiff right to discovery and has deprived the Plaintiff of equal protection and procedural due process.

Amended Complaint, at ¶¶5, 6, 7,8, and 11.

The Plaintiff further alleges that the actions of the Judicial Defendants "were taken in the complete absence of all jurisdiction," and he has requested relief in the form of the appointment of a special prosecutor to investigate and prosecute "the violations of the

Plaintiff's civil rights by the Judiciary Defendants and to provide monetary damages, costs and reimbursed expenses." Id. at ¶¶14 and 16.[8]

The Plaintiff has not identified whether the claims brought against the Judicial Defendants are individual capacity claims, or official capacity claims. As such, we are bound to construe the Plaintiff's claims against the Judicial Defendants as official capacity claims. See, Johnson v. Outboard Marine Co., 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."), citing Artis v. Francis Howell North Band Booster Association, Inc., 161 F.3d 1178, 1182 (8th Cir. 1998); Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995). Accordingly, the Judicial Defendants are entitled to the protections afforded by the Eleventh Amendment. Larson v. Kempker, 414 F.3d 936, 939 n. 3 (8th Cir. 2005).

_____

[8]In his subsequent submissions, the Plaintiff has urged that it is improper for the Minnesota Attorney General to defend the Judicial Defendants in the pending action. This contention is plainly meritless, as each of the Judicial Defendants are State officers, and their alleged conduct occurred in the performance of their official duties. See, Agnew v. Campbell, 1990 WL 188723, at *2 (Minn. App., December 4, 1990), rev. denied, (January 24, 1991), citing Minnesota Statutes, Section 806 (requiring the Office of the Attorney General to represent State officers in matters pertaining to their official duties).

-34-

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.  For over a century, the Amendment has been understood to stand for the proposition that a non-consenting State is immune from Federal Court suits by its own citizens, as well as by citizens of another State.  See, Kimel v. Florida Board of Regents, 528 U.S. 62, 72 (2000); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 15 (1890)(such suits were "not contemplated by the constitution when establishing the judicial power of the United States").  In effect, the Eleventh Amendment immunizes from suit a "state agency or official * * * if immunity will 'protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.'"  Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996), quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 123 n. 34 (1984); see also, Regents of the University of California v. Doe, 519 U.S. 425 (1997); Edelman v. Jordan, 415 U.S. 651 (1974); Ford Motor Co. v. Department of Treasury, 323 U.S.

459, 464 (1945), overruled on other grounds, <u>Lapides v. Board of Regents of University System of Georgia</u>, 535 U.S. 613, 614-15 (2002).

Over the years, the Supreme Court has fashioned a patchwork of exceptions to the Eleventh Amendment's limitation on Federal Court jurisdiction, as that doctrine was initially expressed in <u>Hans v. Louisiana</u>, supra.  Under the doctrine of <u>Ex parte Young</u>, 209 U.S. 123 (1908), a Federal Court retains jurisdiction, notwithstanding the Eleventh Amendment, to direct State officials to conform their practices to the requirements of Federal law, even though such an injunction might have collateral effects upon a State Treasury.[9]  See, <u>Edelman v. Jordan</u>, supra at 667-68; <u>Milliken v. Bradley</u>, 433 U.S. 267, 289 (1977).  Such an exercise of jurisdiction, however, does not extend to the award of retroactive relief which requires the payment of funds from the State Treasury.  See, <u>Edelman v. Jordan</u>, supra at 667-68.  Thus, the Eleventh Amendment bars actions, in Federal Court, which seek monetary damages from individual State Officers, in their official capacities, because such lawsuits are essentially "for the recovery of money from the state." <u>Ford Motor Co. v. Department</u>

---

[9]In <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 126 (1984), the Court held that pendent State law claims, for even prospective injunctive relief, were barred by the Eleventh Amendment and, to that extent, the doctrine in <u>Ex parte Young</u> was substantially narrowed.

-36-

of the Treasury, supra 464; see also, Will v. Michigan Dep't of State Police, 491 U.S.

58, 71 (1989)("[N]either a State nor its officials acting in their official capacities are

'persons' under §1983" when sued for damages.).

While the Plaintiff has requested that the Court appoint a special prosecutor to

investigate the alleged actions of the Judicial Defendants, it appears that the only relief

sought from the Judicial Defendants are monetary damages.  See Amended Complaint,

at ¶15.  Therefore, the Eleventh Amendment bars the Plaintiff's claims against the

Judicial Defendants.

Moreover, even if the Complaint could be construed to allege a claim against the

Judicial Defendants, in their individual capacities, such a claim would be barred by the

doctrine of judicial and quasi-judicial immunity, considering that all of the alleged acts

of the Judicial Defendants were in the performance of their judicial functions.  See,

Edlund v. Montgomery, 355 F. Supp.2d 987, 990 (D. Minn. 2005) ("[T]he factors

determining whether an act by a judge is a 'judicial' one relate to the nature of the act

itself, i.e., whether it is a function normally performed by a judge, and to the

expectations of the parties, i.e., whether they dealt with the judge in his judicial

capacity."), quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978); Mireles v. Waco,

502 U.S. 9, 11 (1991)("[L]ike other forms of official immunity, judicial immunity is an

immunity from suit, not just from ultimate assessment of damages," and "judicial

immunity is not overcome by allegations of bad faith or malice, the existence of which

ordinarily cannot be resolved without engaging in discovery and eventual

trial.")[internal citations omitted]; <u>Boyer v. County of Washington</u>, 971 F.2d 100, 102

(8th Cir. 1992)("[C]ourt clerks have absolute quasi-judicial immunity from damages for

civil rights violations when they perform tasks that are an integral part of the judicial

process."), cert. denied <u>sub</u> <u>nom</u>, <u>Boyer v. LeClue</u>, 508 U.S. 974 (1993).[10]  Moreover,

---

[10]The circumstances surrounding the Plaintiff's claim against Clausen differ from those presented in his claims against the State Court Judges.  The Plaintiff alleges that Clausen failed to accept documents that he sought to file.  Routinely, Clerks of Court are obligated to reject certain filings, if they are out of compliance with the applicable local rules of the Court.  Here, Clausen does not inform the Court as to the basis for her alleged rejection of the Plaintiff's filings, and our obligation to construe the allegations of the Plaintiff's Complaint, when considered in the context of a dispositive Motion, in a light most favorable to the nonmoving party -- here, the Plaintiff -- allows no reasonable inference that the rejection of those filings was for meritorious reasons.

Construing the Plaintiff's allegations in a light most favorable to the Plaintiff reveals an arguable contention that, in allegedly preventing the Plaintiff from communicating with the Court, Clausen denied the Plaintiff's recognized constitutional right of access to the Courts.  See, e.g., <u>Henriksen v. Bentley</u>, 644 F.2d 852, 854 (10th Cir. 1981).  However, the Plaintiff has not identified any injury, as a result of Clausen's conduct, as he has not alleged that her actions precluded his ability to litigate a nonfrivolous claim.  See, <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002); <u>Lewis v. Casey</u>, 518 U.S. 343, 353 (1996).  Accordingly, even if we construed the Plaintiff's

(continued...)

despite the Plaintiff's conclusory allegations, he has not alleged any facts which would suggest that the Judicial Defendants acted "in the complete absence of all jurisdiction." See, Edlund v. Montgomery, supra at 990 ("This narrow exception to the doctrine of judicial immunity applies only when a judge hears a case that is clearly beyond her judicial authority, such as a probate judge trying a criminal case."), citing Stump v. Sparkman, supra at 357, and n. 7.

Accordingly, since we find that the Plaintiff's Section 1983 claims, against the Judicial Defendants, are barred under the Eleventh Amendment, and by operation of the doctrine of judicial, and quasi-judicial immunity, we recommend that the Judicial Defendant's Motion to Dismiss be granted.

       3)    Choquette's Motion to Dismiss.   The Plaintiff's Section 1983 claim against Choquette is predicated upon the following allegations:

> The Plaintiff was a member of VFW Post #29848 until November 10, 2004, when the Plaintiff voluntarily cancelled his membership due to the failure of the Post Commander or the Quartermaster to protect the Plaintiff from the Harassment of Curtis D. Foss, while at Post activities.

---

[10](...continued)
allegations against Clausen, in her individual capacity, we would find that the claim is without merit, as the Plaintiff has failed to demonstrate that he suffered an actual injury from Clausen's alleged failure. Id.

> Curtis D. Foss is not a member of the Post and as a guest, has no standing to be at Post activities, especially when a member is suffering from his harassment. The Plaintiff has filed numerous complaints of Curtis D. Foss's harassment verbally to Post officials, by letter and phone calls, but despite some feeble attempts of requesting Foss to move away from the Plaintiff, during a telephone conversation on November 9, 2004, Quartermaster Myron Choquette, indicated that the VFW Post supported me 100% and that Foss would be banned. Myron Choquette testified at the hearing that he had the authority to remove both parties and was prepared to do so, even though there had been overwhelming testimony and evidence that Foss was the only one who was doing any harassing and causing problems not only for the Plaintiff, but others. The refusal of the VFW Post Officials to provide for protection of the Plaintiff from harassment is a violation of equal protection.

Amended Complaint, at ¶10.

The Plaintiff's Section 1983 claim against Choquette is fatally defective in that he has failed to allege any facts which might establish that Choquette was acting under color of State law, or that Coquette somehow violated his Constitutional rights.

By its plain language, Section 1983 only applies when the actions complained of were committed by persons "under color of state law." We previously addressed the application of the "under color of state law" requirement to private party Defendants in Steele v. City of Bemidji, supra at 845-846, where we observed, as follows:

-40-

As a result of the "State action" requirement of Section 1983, the injuries, at issue, must have been caused by the exercise of some right, or privilege, that was created by the State, by a rule of conduct imposed by the State, or by a person for whom the State is responsible. Parker v. Boyer, 93 F.3d 445, 448 (8th Cir. 1996). Although "State action," for Section 1983 purposes, is ordinarily committed by officers and employees of a State governmental agency, Courts have, nonetheless, found that private parties can commit "State action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). The test employed, in determining whether a private citizen's conduct constitutes "State action," is one of ascertaining whether the private citizen's conduct can be "fairly attributable to the State." Id.

In order to impose upon a private party the requirements of Section 1983, the Plaintiff must allege that the "claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority, * * * and second, whether the private party charged with the deprivation could be described in all fairness as a state actor." Edmonson v. Leesville Concrete Co., 500 U.S. 614, 620 (1991), citing Luger v. Edmonson Oil Co., 457 U.S. 922, 929-932 (1982).

"[I]n determining whether a particular action or course of conduct is [State action], it is relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional governmental function; and whether the incident is aggravated in a unique way by the

incidents of governmental authority."  Dean v. Olibas, 129 F.3d 1001, 1005 (8th Cir.

1997), quoting Edmonson v. Leesville Concrete Co., supra at 621-622.

The Plaintiff's Amended Complaint is devoid of any allegation which would

support a finding that Choquette was acting under the color of State law, in that he is

not alleged to have relied upon any governmental assistance, to have performed a

traditional governmental function, or to have undertaken the alleged actions with

governmental authority.  Moreover, Choquette's position, as the VFW Quartermaster,

is insufficient to render him a State actor since the VFW is a private organization that

operates pursuant to a Congressional Charter, and such a relationship has been

deemed insufficient to establish a State action.  See, Stearns v. Veterans of Foreign

Wars, 394 F. Supp. 138, 143-146 (D.C. D.C. 1975), aff'd, 527 F.2d 1387 (D.C. Cir.,

January 28, 1976)[Table Decision], cert. denied, 429 U.S. 822 (1976); Title 36 U.S.C.

§§230101 and 230102.

The Plaintiff's Section 1983 claim against Choquette is also deficient in that he

has failed to allege any violation of the United States Constitution, or Federal law, by

Choquette.  Notably, while the Plaintiff argues that Choquette deprived him of his

rights under the Equal Protection Clause of the Fourteenth Amendment when,

assertedly, Choquette failed to protect him from Foss, and when he prohibited the

Plaintiff from entering the VFW, at the direction of the State Court, the law is clear that Equal Protection and Due Process rights under the Fourteenth Amendment are not protected against private encroachment.  See, Wallach v. Cannon, 357 F.2d 557, 561-62 (8th Cir. 1966)(Equal Protection and Due Process); Peterson v. City of Greeneville, 373 U.S. 244, 247 (1963)(Equal Protection); United States v. Guest, 388 U.S. 745, 755 (1966) ("[R]ights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority."); Chambers v. Omaha Girls Club, 629 F. Supp. 925, 938 n. 22 (D. Neb. 1986)(Due Process), aff'd, 834 F.2d 697 (1987); United States v. Cruikshank, 92 U.S. 542, 554 (1875)("The fourteenth amendment prohibits a State from depriving any person of life, liberty, or property without due process of law; but this adds nothing to the rights of one citizen against another.").   Accordingly, as a non-governmental official who, besides the wholly conclusory allegations of conspiracy, is not alleged to have acted in concert, or under the authority of any governmental entity, Choquette does not owe the Plaintiff any obligations under the Fourteenth Amendment.

Therefore, since we find that the Plaintiff has failed to present sufficient evidence to establish that Choquette was acting under color of State law, and because

the Plaintiff has failed to allege any violation of the Constitution or laws of the United States, by Choquette, we recommend that Choquette's Motion to Dismiss be granted.

          4)    <u>Swatek's Motion to Dismiss</u>.  For many of the same reasons, the Plaintiff has also failed to establish a viable Section 1983 claim against Swatek. Specifically, although the Plaintiff has alleged that Swatek "enlisted" Foss, and Judge LeDuc, "to harass the Plaintiff and his daughter-in-law, former wife, Sandra Harju, Gordon Perrault, and Richard Strom," see, <u>Amended Complaint</u>, at ¶3, the only factual allegation, which supports the Plaintiff's contention, is his assertion that Judge LeDuc "is a personal friend and former neighbor of Defendant Swatek, who issued a Harassment Restraining Order against the Plaintiff on June 14, 2004, without a hearing and which was based on the fraudulent affidavit of Curtis D. Foss." <u>Id.</u> at ¶5.

Under certain circumstances, a private party may be held liable, under Section 1983, for acting in concert with a State Court Judge so as to deprive an individual of his Constitutional rights.  See, <u>Dennis v. Sparks</u>, 449 U.S. 24, 26 (1980).  However, such circumstances are limited, in that "merely resorting to the courts, and being on the winning side of a lawsuit does not make a party a co-conspirator, or joint actor with the judge."  <u>Id.</u> at 28.  Here, the Plaintiff has alleged nothing more than an acquaintanceship between Swatek and Judge LeDuc.  While such an acquaintanceship

may create the appearance of impropriety, see <u>Moran v. Clarke</u>, 298 F.3d 636, 649 (8th Cir. 2002), it does not, without more, establish "a mutual understanding" between the private actor, and the public official, to engage in conduct violative of the Constitution. See, <u>Tahfs v. Proctor</u>, 316 F.3d 584, 592 (6th Cir. 2003)(unverifiable allegations of "corruption," concerning a series of State Court decisions that were not in her favor, were insufficient to establish that a private party was acting "under color of state law," for the purposes of Section 1983); see also, <u>Dossett v. First State Bank</u>, 399 F.3d 940, 951 (8th Cir. 2005)("Under [Section] 1983, a plaintiff must establish not only that a private actor caused a deprivation of a constitutional right, but that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objectives of the conspiracy."), citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970).

Therefore, as none of Swatek's alleged actions can be characterized as being "fairly attributable to the State," see, <u>Lugar v. Edmonson Oil Co.</u>, supra at 937, Swatek cannot be held liable to the Plaintiff under Section 1983. Specifically, the Plaintiff has not alleged facts which could establish that Swatek was performing a traditional State function, nor does he allege that Swatek's actions were taken under State authority, or that Swatek invoked the authority of the State -- aside from seeking

redress in the Courts -- in order to perpetrate the alleged constitutional violation. Accordingly, in the absence of any allegations which would establish that Swatek was acting under color of State law, or that Swatek's conduct amounted to a violation of the Plaintiff's constitutional rights, or other rights recognized by Federal law,[11] we recommend that Swatek's Motion to Dismiss be granted.

      5)   <u>Merchants' Motion to Dismiss</u>.  Merchants was named as a Defendant in the Plaintiff's State Court action, based upon an allegation that it unlawfully obtained the insurance proceeds from the claim for damage caused to Swatek's home as a result of the sewer malfunction.  See, <u>Plaintiff's Koochiching Complaint</u>, at ¶15.  Much like Hasbargen, Merchants was dismissed from the State Court action, with prejudice, following its disclaimer of any interest in the disputed insurance proceeds that it received for claims made on Swatek's home, and its deposit of those proceeds with the Koochiching County District Court.  See, <u>Vaughn v. Swatek</u>, C0-04-124, (Minn. Dist. Ct. 9th Dist., October 4, 2004), <u>Burgett. Aff.</u>, Exh. N, p. 1, at ¶2.  As a result of its dismissal from the State Court action, Merchants

---

[11]For reasons previously addressed, Swatek, who is a private actor, owes no obligation to the Plaintiff, under the Fourteenth Amendment.

asserts that the doctrine of res judicata bars the Plaintiff's present Section 1983 claim against it.

We have already detailed the showings required for the application of res judicata, and we find that Merchants has satisfied those showings here.  The Plaintiff's State Court Complaint alleged that the Plaintiff had an agreement with Swatek to "house sit" Swatek's property, and that, when the sewer malfunctioned, he arranged, and paid for, the required repairs.  The Plaintiff further alleged that, after becoming aware that Merchants had acquired the insurance proceeds for the sewer malfunction, he sought payment, from Merchants, for his expenses and labor, and that Merchants denied his requests, at Swatek's direction.  The Plaintiff alleges that such conduct was violative of Minnesota Statutes Section 169.52, which prohibits theft.

The Plaintiff has attempted to distinguish his present claim, from his prior State Court claim, as follows:

> This lawsuit does not include an award of the funds, which is an action identified as Koochiching County Court File No. 36-C1-04-124, that is pending a jury trial.  The action here is a result of the actions and failures of the Defendants in that case, to provide for procedural due process, equal protection and is due to the invidious gender discrimination,

> that has occurred against the Plaintiff and gives rise to this
> Federal Civil Rights Cause of Action under U.S.C. Title 42,
> Section 1983.

Amended Complaint, at ¶1.

However, the factual predicate for his claim, against Merchants, does not allege any

"actions or failures" in the conduct of Merchant's defense in the State Court action,

but instead, are limited to the following allegations:

> Defendants Swatek and Merchants Bank N.A. proceeded
> to the closing of the sale of the Defendant Swateks [sic]
> former residence by delivery of a fraudulent Warranty Deed
> on November 26, 2003, in violation of Minn. Stat. 513.44.
> The Defendants [sic] actions, in relation to funds, which
> had been received for payment of an insurance loss claim,
> violated Minn. Stats. 514.01 and 514.02.   Defendants
> Swatek and Merchants Bank N.A. conspired to use these
> illegally attached funds for the payment of delinquent
> mortgage interest, instead of paying for the materials and
> labor provided by the Plaintiff.  These funds were illegally
> attached by Merchants Bank N.A. and under provisions of
> Minn. Stat. 514.02, the Defendants were criminal acts [sic],
> punishable under Minn. Stat. 609.52.

Amended Complaint, at ¶2.

In comparing the Plaintiff's allegations against Merchants in the State Court action,

with those alleged here, we are satisfied that the Plaintiff's present Section 1983 claim

arises out of the same set of factual circumstances.  Specifically, both actions are

predicated on Merchants' retention of the disputed insurance proceeds, against the

wishes of the Plaintiff, who believes that he is entitled to such funds because of the expenses he assertedly incurred for repairing the alleged damage which he claims was caused by the sewer malfunction at Swatek's home.[12]

We are also satisfied that, under Minnesota law, the dismissal of Merchants, from the State Court action, constituted a final decision on the merits. Specifically, Rule 41.02(c), Minnesota Rules of Civil Procedure, provides that, "[u]nless the court specifies otherwise in its order, a dismissal pursuant to this rule and any dismissal not provided for in this rule or in Rule 41.01,[13] other than a dismissal for lack of

---

[12]The Plaintiff offers no reason why he did not sue Merchants, in that earlier State Court action, for the purported Section 1983 claims that he asserts here. As we have noted, res judicata applies not only to those matters which were pled, "but also to every matter which might have been litigated [in the earlier action]." Dorso Trailer v. American Body & Trailer, 482 N.W.2d 771, 774 (Minn. 1992), quoting Mattsen v. Packman, 358 N.W.2d 48, 49 (Minn. 1984). Of course, if the Section 1983 claim had previously been pled in the State Court, Merchants would not have been able to employ the interpleader mechanism to secure a dismissal, as there would have been a claim over and above that pertaining to the insurance proceeds. Nonetheless, such a Section 1983 claim would have been frivolous, on its merits, as Merchants' actions were those of a private party, and not of a State actor. Accordingly, even if the Plaintiff had pled the Section 1983 claim in his State Court action, Merchants would have been legally entitled to a dismissal -- which is the same result we would reach if we considered that claim on its merits. We need not do so here, as res judicata bars the Plaintiff's Section 1983 claim here.

[13]Rule 41.01, Minnesota Rules of Civil Procedure, governs the effect of a voluntary dismissal, and has no application to our analysis here.

jurisdiction, for forum non conveniens, or for failure to join a party indispensable pursuant to Rule 19, operates as an adjudication upon the merits."  Here, the State Court action against Merchants was dismissed "with prejudice," and there is nothing in the Order of the State District Court to qualify that dismissal, or to suggest that the dismissal was based on any of the exceptions identified in Rule 41.02(c).  Vaughn v. Swatek, C0-04-124, (Minn. Dist. Ct. 9th Dist., October 4, 2004), Burgett Aff., at Exh. N.  Accordingly, the dismissal of Merchants from the State Court action was a final decision, on its merits.  See, State v. Joseph, supra at 328 (Order granting a Motion to Dismiss by operation of the statute of limitations was a final judgment on the merits because "the dismissal * * * was a dismissal not provided for by Rule 41.01, and the district court's order did not specify that the dismissal operated as anything other than an adjudication on the merits."); Lommen v. City of East Grand Forks, supra at 272 (dismissal on immunity grounds was a final decision on the merits); Johnson v. Hunter, 447 N.W.2d 871, 873 (Minn. 1989)("Even though a case dismissed with prejudice for lack of prosecution * * * is disposed of on nonsubstantive grounds, * * * such a dismissal nonetheless 'operates as an adjudication on the merits,' * * * and thus can form the basis for res judicata.") [internal citations omitted]; but see, Hanson v. Hackley, 1999 WL 43522 at *3 (Minn. App., February 2, 1999)(noting that the "mere

use of the phrase 'dismissed with prejudice' does not turn a jurisdictional dismissal into a dismissal on the merits.").[14]

Lastly, we have no doubt that the State Court afforded the Plaintiff a full and fair opportunity to litigate his claim.  "The question of whether a party had a full and fair opportunity to litigate a matter generally focuses on 'whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties.'"  State v. Joseph, supra at 328, quoting Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1521 (10th Cir. 1990), citing, in turn, 18 Charles Allen Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure, §4423

---

[14]In Hanson, the Court concluded that the dismissal of a Section 1983 claim "with prejudice" was not a final judgment on the merits where the only deficiency in the Complaint was the plaintiff's failure to name the proper defendants.  Hanson v. Hackley, 1999 WL 43522, at *3 (Minn. App., February 2, 1999).  Accordingly, the Court determined that the dismissal was "in the nature of a jurisdictional dismissal." Id.

The present case is readily distinguishable from Hanson, as there is nothing in the State Court's Order to suggest that the dismissal was jurisdictional in nature. Rather the Court dismissed the claim against Merchants, following Merchants' deposit of the disputed insurance proceeds with the Court, and its apparent determination that, absent its retention of the disputed funds, the Plaintiff's Complaint did not state any viable claim against Merchants.

(1981 and Supp. 2000).  Here, the Plaintiff appeared at the State Court Hearing on Merchants' Motion to Dismiss, see, <u>Burgett Aff.</u>, at Exh N, and the Record is devoid of any suggestion that the Plaintiff's ability to litigate Merchants' Motion, in State Court, was burdened by any procedural limitations.  Furthermore, the Plaintiff has not identified any circumstance in the State Court action, which would have negated his incentive to litigate Merchants' Motion to Dismiss the State Court claims, and there has been no suggestion that the relationship between the Plaintiff and Merchants somehow limited the Plaintiff's ability to effectively litigate his claim against Merchants in State Court.

Accordingly, we find that res judicata bars the Plaintiff's Section 1983 claim against Merchants.  However, in the interests of completeness, we address the merits of the Plaintiff's Section 1983 claim against Merchants, and find that the Plaintiff's Section 1983 claim against Merchants fails on its merits, as well.  Specifically, the Plaintiff has not alleged conduct sufficient to establish that Merchants was acting under color of State law, or that its actions violated any provision of the United States Constitution, or Federal statute.  The only conduct alleged in the Complaint, which pertains to Merchants, is the allegation that Merchants "conspired" with Swatek to utilize proceeds from the insurance claim to pay portions of Swatek's mortgage rather

than to pay the Plaintiff.  Even with the most indulgent reading, such alleged conduct does not amount to a violation of the Plaintiff's Equal Protection or Due Process rights, or any other Federal rights which the Plaintiff has identified in his Complaint.[15] Accordingly, we recommend that Merchants' Motion to Dismiss be granted.

B.    The Plaintiff's Motions to Join Additional Defendants.

In his Motion, the Plaintiff seeks to join Edward Touissant ("Touissant"), who is the Chief Judge of the Minnesota Court of Appeals, and Dennis J. Murphy ("Murphy"), who is a Minnesota District Court Judge for the Ninth Judicial District, as Defendants in this action owing to their adverse rulings in his State Court proceedings.[16]  Docket No. 102, at p. 17.  He has also sought to join, as Defendants,

---

[15]In a subsequent submission, the Plaintiff alleges that Merchants violated the Federal Real Estate Settlement Procedures Act, Title 12 U.S.C. §2601, et seq.  See, Affidavit of Alan R. Vaughn, at ¶6, Docket No. 51.  However, no such allegations appear in the Plaintiff's Amended Complaint, and therefore, any such claim is purely hypothetical, as it has not been pled.

[16]The Plaintiff has failed to provide the Court with a proposed amended pleading, which sets forth, in their entirety, his proposed allegations against the individuals that he seeks to join.  See, D. Minn. LR-15.1 ("A party who moves to amend a pleading shall file such motion and shall attach a copy of the amended pleading to the motion.").  Accordingly, in describing the substantive allegations against those persons, who the Plaintiff seeks to add as Defendants, we have relied upon the Plaintiff's Motion papers, which describe the alleged conduct upon which the proposed joinder is predicated.

Lyndon F. Larson ("Larson"), and Ronald Bowman ("Bowman"), for their asserted roles in closing the sale of Swatek's residence, id., at p. 12; the City of International Falls, and various city officials including Shawn Mason, who is identified as the Mayor, Rodney Osterness, who is identified as the City Administrator, Chris Raboin, who is identified as the Chief of Police,  Brian Jesperson and Terry Woods, who are both identified as International Falls Police Officers, for assertedly filing false police reports concerning an incident between the Plaintiff and Foss, and for refusing his demand for a Hearing, in order to resolve his grievances; and the State Auto Insurance Company for its distribution of insurance funds to Merchants.  Id., at p. 18.

The Plaintiff has argued that each of those individuals is a necessary party to this action.  Under Rule 19(a), Federal Rules of Civil Procedure, a necessary party is one who, absent joinder, will deny the Plaintiff complete relief.  See, Orff v. United States, --- U.S. ---, 125 S.Ct. 2606, 2610 (2005).  Unfortunately for the Plaintiff's argument, he has failed to demonstrate any basis for a conclusion that full relief may not be granted in the absence of the individuals whom he has sought to join, or that a Federal Court action would be available to the Plaintiff against any of the proposed additional Defendants.

Specifically, even affording the Plaintiff's Complaint a most liberal interpretation, and considering the allegations contained in the Plaintiff's other submissions, the Plaintiff has failed to identify any basis upon which relief could be granted against Touissant and Murphy, as we have previously detailed that such a suit would be barred by the Eleventh Amendment, and the doctrine judicial immunity. Similarly, the Plaintiff has failed to assert any viable claim against State Auto Insurance, Larson, or Bowen, as there are no allegations which would so much as suggest that any of those individuals, or entities, were acting under color of State law, and the conduct alleged in the Plaintiff's submissions -- namely, acts concerning the sale of Swatek's home, and the transfer of funds to Merchants -- are insufficient to give rise to a constitutional violation.

Lastly, the Plaintiff's failure to allege any conduct, in his Complaint, pertaining to the acts of the City of International Falls, or its officials, as well as the tangential relationship between the conduct that the Plaintiff now attributes to the City and its officials, and the claims presented in his Complaint, convinces us that joinder is inappropriate, and that the Plaintiff's Motions should be denied.

C.    The Plaintiff's Motion to Remove his State Court Action to Federal
      Court.

The Plaintiff's Motion to remove his State Court action is patently frivolous.

Notably, no Federal Questions are presented, on the face of the Plaintiff's well-

pleaded State Court Complaint, as the dispute is limited to the rightful possession of

the proceeds of an insurance claim.  Furthermore, both Vaughn and Swatek,  who are

the two remaining parties to that action, appear to be residents of Minnesota, and the

amount in controversy appears to be approximately $2,601.10, which is well short of

$75,000.00 jurisdictional threshold for diversity claims.  See, Plaintiff's Koochiching

Complaint, at ¶16, Burgett Aff., Exh. A, Docket No. 13.  Accordingly, since we find

that the Plaintiff has failed to demonstrate a viable basis of Federal Court Jurisdiction

over his State Court Complaint, we recommend that his Motions to remove that action

be denied.[17]  See, Title 28 U.S.C. §§1331, 1332, and 1441; see MaGee v. Exxon

---

[17]The Plaintiff has also moved for the disclosure and transfer of the Court
Records in the proceedings before the State Court. See, Docket No. 42.  Since we
find that removal of the State Court proceedings is improper, we recommend that the
Plaintiff's Motion for the disclosure and transfer of such records be denied, as moot.

Corp., 135 F.3d 599, 601 (8th Cir. 1998); James Neff Kramper Family Farm

Partnership v. IBP, Inc., 393 F.3d 828, 831 (8th Cir. 2005).[18]

D.   The Plaintiff's Motions for an Order of an Entry of Default against Foss and
     Swatek.

   According to Rule 55(a), Federal Rules of Civil Procedure, "[w]hen a party

against whom a judgment for affirmative relief is sought has failed to plead or

otherwise defend as provided by these rules, and the fact is made to appear by

affidavit or otherwise, the clerk shall enter the party's default."  A Judgment of default

may, thereafter, be entered on application to the Court.   Rule 55(b)(2), Federal Rules

of Civil Procedure.   "Rule 55(b)(2) commits the entry of a default judgment to the

discretion of the district court."   United States v. Woods, 2004 WL 790332 at *3 (D.

Minn., March 31, 2004), citing FTC v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th

Cir. 1977), see, Harris v. St. Louis Police Dept., 164 F.3d 1085, 1086 (8th Cir. 1998).

---

[18]The Plaintiff's attempted removal also lacks authority under the removal statute, as the Plaintiff, here, also appears as the Plaintiff in the State Court action, for which he is seeking removal.  See, Title 28 U.S.C. §1441(a) (providing that an action in which the Federal Court has original jurisdiction may be removed "by the defendant or defendants.").  As such, the Plaintiff's initial decision to litigate his claim in State Court would also preclude removal under Section 1441.  Accordingly, we do not consider the further defects in the Plaintiff's Motion, including its untimeliness.

The Plaintiff seeks an Order for an Entry of Default against both Swatek and Foss. Since the merits of those Motions involve different considerations, we address each in turn.

1.    Swatek.   Since the Plaintiff has been granted leave to proceed IFP, service of process against the named Defendants was effected by the United States Marshal Service, following the Plaintiff's completion of Marshal Service forms for each of the named Defendants. The Marshal Service was able to effect service of process, as to Swatek, on February 16, 2005, see, Docket No. 58, and on February 23, 2005, Swatek filed an "Acknowledgment of Service" form, along with a letter to the Clerk of Court, which detailed certain aspects of his dispute with the Plaintiff. See, Docket Nos. 5 and 6.

Then, on March 16, 2005, Swatek filed a submissions entitled "Statement of the Case," and "Notice of Motion to add 3rd Party Cross Claim of Merchants Bank, N.A [sic], including its Directors and Officers." See, Docket Nos. 25 and 26. After reviewing each of those submissions, we concluded that they failed to satisfy the requirements for responsive pleadings, under Rules 8 and 12, Federal Rules of Civil Procedure, and we issued an Order, on May 4, 2005, directing the Plaintiff to inform Swatek of his obligation to file a responsive pleading and, if such a response were not

-58-

received within ten (10) days, then the Plaintiff was directed to seek an entry of default. On May 10, 2005, Swatek filed a Motion to Dismiss the Plaintiff's Complaint, and for sanctions.   On that same day, the Plaintiff filed the pending Motion for an entry of default.   Subsequently, Swatek retained counsel, and has since filed a second Motion to Dismiss, which was heard by the Court, on September 1, 2005.

We have considered Swatek's Motions to Dismiss, and have recommended that his Motions be granted, as a result of the Plaintiff's failure to allege a viable Section 1983, or conspiracy claim, against Swatek.   Accordingly, we recommend that the Plaintiff's Motion for an Order of Entry of Default be denied, as moot.  See, Dealers Supply Co., Inc. v. Cheil Industries, Inc., 348 F. Supp.2d 579, 594 (M. D. N.C. 2004)("Plaintiff's Motion for Entry of Default * * * has been rendered moot by the filing of Defendants' motion to dismiss."); Ford v. New Britain Transportation Co., 2005 WL 1785269 at *6 (D. Conn., July 26, 2005)(denying, as moot, Motion for an entry of default under Rule 55(a), where Motion to Dismiss was granted).

2.    Foss.   Although Foss was served with a Summons and Complaint on May 6, 2005, see Docket No. 65, he has not, as of yet, filed any responsive pleading. Therefore, Foss is in default.  See, DirecTV, Inc. v. Sheffield, 2005 WL 563108 at *2 (D. Minn., March 8, 2005); Rule 55(a), Federal Rules of Civil Procedure.

However, as we related at the Hearing, a party's default does not automatically entitle

the Plaintiff to a Default Judgment, under Rule 55.  Rather, "[i]f the court determines

that a defendant is in default, the factual allegations of the complaint will be taken as

true." F.T.C. v. Kitco of Nevada, Inc., 612 F. Supp. 1282, 1297 (D. Minn. 1985),

citing Thompson v. Wooster, 114 U.S. 104, 110 (1884); see United States v. Woods,

supra at *3; 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal

Practice and Procedure §2688 (3d ed. 2004); Rule 8(d), Federal Rules of Civil

Procedure.  In this respect, the Court of Appeals for the Fifth Circuit has reasoned as

follows:

> [A] defendant's default does not in itself warrant the court
> in entering a default judgment. There must be a sufficient
> basis in the pleadings for the judgment entered.  As the
> Supreme Court stated in the "venerable but still definitive
> case" of Thomson v. Wooster: a default judgment may be
> lawfully entered only "according to what is proper to be
> decreed upon the statements of the bill, assumed to be
> true," and not "as of course according to the prayer of the
> bill." 114 U.S. at 113, 5 S.Ct. at 792, 29 L.Ed. at 108. The
> defendant is not held to admit facts that are not well-
> pleaded or to admit conclusions of law. In short, despite
> occasional statements to the contrary, a default is not
> treated as an absolute confession by the defendant of his
> liability and of the plaintiff's right to recover. Thomson v.
> Wooster; Ohio Central Railroad Company v. Central Trust
> Company of New York[, 133 U.S. 83 (1890)]; 10 Wright &
> Miller, Federal Practice and Procedure 282.

Nishimatsu Construction Company, Ltd. v. Houston National Bank, 515 F.2d 1200, 1206 (5th Cir. 1975); see, Black v. Lane, 22 F.3d 1395, 1399 (7th Cir. 1994)("The entry of a default order does not * * * preclude a party from challenging the sufficiency of the complaint."); Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 15 (1st Cir. 1992); Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988), cert. denied 493 U.S. 858 (1989); see also, Edwards v. Culbertson Law Offices, 2001 WL 1640104 at *3 (D. Minn., December 7, 2001)("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."), aff'd, 62 Fed.Appx. 129, 2003 WL 21007147 (8th Cir., May 6, 2003), citing 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure §2688 (3d ed. 2004)

Furthermore, if the Court determines that a Default Judgment is improper because the Complaint fails to state a claim upon which relief can be granted, the Court may dismiss, sua sponte, the Complaint under Rule 12(b)(6), Federal Rules of Civil Procedure. See, Edwards v. Culbertson Law Offices, 62 Fed.Appx. 129, 2003 WL 21007147 (8th Cir., May 6, 2003), citing Smith v. Boyd, 945 F.2d 1041, 1042-1043 (8th Cir. 1991)("We now hold that a district court sua sponte may dismiss a complaint under Rule 12(b)(6) so long as the dismissal does not precede service of process."); see, e.g., Willis v. Centennial Mortgage & Funding, Inc., 2004 WL 2075558 at *15 (D. Minn., September 16, 2004).

Reviewing the allegations of the Amended Complaint, the Plaintiff has failed to allege a viable claim against Foss under Title 42 U.S.C. §1983. Specifically, even

assuming that all of the allegations in the Complaint were true, the Plaintiff still cannot

establish that Foss' alleged conduct was under color of State law, or that Foss

engaged in conduct that was violative of the Federal rights that were identified in the

Amended Complaint.   Moreover, as has previously been discussed, the Plaintiff's

conclusory allegations, as they pertain to the alleged conspiracy, are inadequate to

state a claim under Section 241, or Section 1985(3).   Accordingly, applying the

standard of Rule 12(b)(6), we find that the Plaintiff has failed to state a claim against

Foss, for which relief could be granted, and therefore, we recommend that the

Plaintiff's Complaint, as to Foss, be dismissed, and that his Motion for an Order of

Entry of Default be denied, as moot.

E.     The Plaintiff's Motion to Appoint a Special Prosecutor.

The Plaintiff has made previous attempts to have a special prosecutor

appointed, and each of those attempts has been squarely rejected.  See, Vaughn v.

City of North Branch, 2003 WL 22145641 at *2 (D. Minn., September 15, 2003),

aff'd, 103 Fed.Appx. 73, 2004 WL 1661980 at *1 (8th Cir., July 27, 2004).   The

principle announced in those cases -- that the executive branch retains the discretion

to investigate and prosecute case -- is equally applicable to the Plaintiff's pending

Motion.  Simply put, we do not have any authority to invade upon that exclusive role

of the executive branch, by appointing a special prosecutor to investigate and/or prosecute a criminal case.  See, <u>In re an Application for Appointment of Independent Counsel</u>, 596 F. Supp. 1465 (E.D. N.Y. 1984), vacated on other grounds, 766 F.2d 70 (2nd Cir. 1985); see also, <u>United States v. Davis</u>, 285 F.3d 278, 382-383 (5th Cir. 2002) (providing, in <u>dicta</u>, that the judiciary does not have the "inherent power" to appoint a special prosecutor because such authority would be in conflict with the authority of the executive under Article II, Section 3, of the United States Constitution).   Therefore, we recommend that the Plaintiff's Motions to Appoint a Special Prosecutor be denied.

F.     <u>Sanctions</u>.

The Plaintiff's current Complaint is the latest installment in a long history of vexatious and frivolous litigation, which the Plaintiff has prosecuted in the past, and which has imposed enormous burden upon the Courts, and upon opposing litigants. See, <u>Vaughn v. City of North Branch</u>, 2001 WL 1640135 (D. Minn. October 30, 2001) ("Vaughn I"), Motion to Vacate denied, 2003 WL 22145641 (D. Minn., September 15, 2003)("Vaughn II"), affirmed 103 Fed.Appx. 73, 2004 WL 1661980 (8th Cir., July 27, 2004)("Vaughn III"); <u>Vaughn v. Anderson</u>, Civ. No. 04-898 (JNE/RLE)(D. Minn. 2004); <u>Vaughn v. United States of America</u>, Civ. No. 04-986 (JNE/RLE)(D. Minn.

2004).  The Record further reflects that the Plaintiff has also engaged in a similar course of conduct in the Minnesota State Courts.  See, <u>Vaughn v. Swatek</u>, C0-04-124 (Minn. Dist. Ct. 9th Dist., February 14, 2005), <u>Anderson Aff.</u>, at Exh. 9.  His actions, in the past, have resulted in monetary sanctions, as well as in limitations being placed upon the Plaintiff's ability to make submissions to the Court.  <u>Id.</u> (imposing a $5,000,00 fine); <u>Vaughn II</u>, supra at *2 (imposing a $500.00 fine, and the precondition that, before the Plaintiff may file another pleading in that action, the pleading must be reviewed by a Magistrate Judge).

Here, the Plaintiff's conduct indelibly establishes that he remains adamant in engaging in purely vexatious litigation.  As now appears sadly evident, if anyone chooses to disagree with the Plaintiff, whether it be a Judge of the State District Court, a Judge of a Federal District Court, a Judge of a Minnesota Appellate Court, or anyone else, the Plaintiff's automatic, and unbridled response, is to sue the person notwithstanding the absence of any lawful grounds upon which to do so.  Accordingly, we are satisfied that a sanction is warranted in order to deter the same conduct, by the same Plaintiff, in the future.  Nevertheless, we decline to recommend the imposition of the sanction advocated by Choquette and Swatek -- namely, a Standing Order which would bar the Plaintiff from bringing any future action, unless

he should either pay the requisite filing fee, or have his application to proceed IFP signed by an attorney at law.  We do not suggest that such a sanction would either be too little or too much -- we simply conclude that, absent an opportunity to be heard on the matter, no assessment can be made as to whether the sanction is consistent with the severity of the sanctionable conduct.

Even though the Plaintiff is proceeding <u>pro</u> <u>se</u>, he remains subject to the requirements of Rule 11, Federal Rules of Civil Procedure.  See, <u>Carman v. Treat</u>, 7 F.3d 1379, 1381 (8th Cir. 1993); <u>Britten v. Benson</u>, 2002 WL 1558276 at *2 (D. Minn., July 12, 2002), citing <u>Burg v. Sissel</u>, 745 F.2d 526, 528 (8th Cir. 1984), and <u>Ginter v. Southern</u>, 611 F.2d 1226, 1227 n. 1 (8th Cir. 1979); see also, <u>Rule 11, Federal Rules of Civil Procedure</u>.  As such, by affixing his signature to any Motion,  pleading, or other paper, the Plaintiff has certified to the Court that the submission being made is nonfrivolous, and that the claims stated therein are not being presented for an improper purpose, such as to harass, or to cause unnecessary delay.  The Plaintiff has been apprised of his Rule 11 obligations in the past, and has, in fact, been sanctioned for conduct that violates those obligations.  See, <u>Vaughn II</u>, supra at 2; see also, <u>Vaughn v. Swatek</u>, C0-04-124 (Minn. Dist. Ct. 9th Dist., February 14, 2005).

-65-

Notably, the Plaintiff has been plainly advised, on numerous occasions, that several of the positions, which he has advanced here, are legally untenable. See, Vaughn I, supra at *9 (Section 241 does not create a private cause of action); Vaughn II, supra at *1 (the appointment of a special prosecutor is left to the discretion of the executive); Vaughn III, supra at *1 (same); Vaughn v. United States of America, supra, Report and Recommendation of March 9, 2004, at p. 7 (absolute judicial immunity extends to suits for money damages for acts taken by judicial officers in their judicial capacities); Vaughn v. Anderson, supra, Report and Recommendation of March 10, 2004, at p. (Eleventh Amendment bars suit for damages against State Judicial Officers acting in their official capacities). Those advices have not deterred the Plaintiff's relentless resort to baseless lawsuits.

Accordingly, while the Plaintiff's action, here, is predicated upon a different set of factual circumstances than those which were involved in the Plaintiff's previous lawsuits, we are troubled by the Plaintiff's insistence on burdening the Courts, as well as the opposing parties, with claims which have no basis in law or fact, and whose only purpose, as best as we can tell, is to harass those who the Plaintiff regards as having impermissibly disagreed with him in some fashion. Therefore, we recommend that the Plaintiff be directed to show cause why he should not be sanctioned for his

-66-

conduct in this action.  The sanction might include the costs and attorneys' fees which he occasioned the Defendants to incur, or it may be a sanction which more effectively restricts the opportunity of the Plaintiff to employ the Federal Court as a tool of pure vindictiveness.  While we understand the Plaintiff to assert indigence, which might preclude the payment of a monetary sanction, we will not make such a prediction on the Record here presented.

NOW, THEREFORE, It is –

RECOMMENDED:

1.      That the Motion of the Defendant Jennifer Hasbargen to Dismiss [Docket No. 16] be granted.

2.      That the Motions of the Defendants Charles H. LeDuc, Donald J. Aandal, Donna K. Dixon, John P. Smith, and Carol Clausen to Dismiss [Docket No. 21] be granted.

3.      That the Motion of Defendant Myron Choquette  to Dismiss or, in the alternative, for Summary Judgment [Docket No. 33] be granted.

4.      That the Motion of Merchants Bank, N.A., and Martha Grimes, to Dismiss [Docket No. 9] be granted.

5.      That the Motion of Richard Swatek to Dismiss [Docket Nos. 60 and 96] be granted.

6.      That the Plaintiff's Motion for an Order for an Entry of Default as to the Defendant Richard Swatek [Docket No. 64] be denied, as moot.

7.      That the Plaintiff's Motion for an Order of Entry of Default as to the Defendant Curtis D. Foss [Docket No. 75] be denied, as moot.

8.      That the Plaintiff's Motions to Appoint a Special Prosecutor [Docket Nos. 40, 67, 75, and 102] be denied.

9.      That the Plaintiff's Motion to Join Additional Defendants [Docket Nos. 41 and 102] be denied.

10.      That the Plaintiff's Motion to Remove the Pending State Court Action to Federal District Court [Docket Nos. 41 and 102] be denied.

11.      That the Plaintiff's Motion for Discovery on Demand for Transfer of the Records of the Ninth Judicial District Court Case Files No. 36-C0-04-124, 36-CX-04-289, 36-C1-04-391, and for the Transcripts of all Hearings Thereon; the Records of Minnesota Appellate Court Case File No. A04-2158, A04-1340, A04-0112 [Docket No. 42] be denied, as moot.

12.    That the Motion of Merchants' Bank to Dismiss the Counterclaim of Richard Swatek [Docket No. 29] be denied, as moot.

13.    That the Motion of Richard Swatek for leave to file a Crossclaim against Merchants' Bank [Docket No. 26] be denied, as moot.

14.    That the Plaintiff's Complaint be dismissed, as to each of the named Defendants.

15.    That the Plaintiff be ordered to show cause why sanctions should not be imposed for his misconduct in this action.

Dated:  December 7, 2005                *s/Raymond L. Erickson*
                                        Raymond L. Erickson
                                        CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than December 23, 2005,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to

comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than December 23, 2005,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.